## No. 21-1042

# In the
# United States Court of Appeals
## for the Seventh Circuit

JOSEPH BROWN, et al.,

*Plaintiffs-Appellants,*

v.

JEFFREY L. KEMP, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin, No. 3:17-cv-00549-wmc.
The Honorable **William M. Conley**, Judge Presiding.

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS
## JOSEPH BROWN, LOUIS WEISBERG AND STEPHANIE LOSSE

JOSEPH S. GOODE (*Counsel of Record*)
MARK M. LEITNER
JESSICA L. FARLEY
LAFFEY, LEITNER & GOODE, LLC
325 East Chicago Street
Suite 200
Milwaukee, Wisconsin 53202
(414) 312-7003

CHRISTOPHER BERRY
KELSEY R. EBERLY
ANIMAL LEGAL DEFENSE FUND
525 East Cotati Avenue
Cotati, California 94931
(707) 795-2533

*Counsel for Appellants*


COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER


# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................... ii

ARGUMENT ........................................................................... 1

    I.    The Record Establishes Plaintiffs' Standing .......................... 1

        A.    Defendants Advocate An Erroneous Legal Standard. ............... 1

        B.    Plaintiffs Are Chilled Because Their Desired Conduct Falls Within The Scope Of The Statute. ................................ 2

        C.    Although They Need Not Have, Plaintiffs Also Showed A Credible Threat Of Prosecution Based On Actual Threats And Enforcement Against Them. ........................................ 8

    II.    The Statute Targets Pure Speech Based On Its Content And Viewpoint. ........................................................................ 11

        A.    The 2016 Amendment To The Statute Directly Targets Pure Speech. ............................................................ 11

        B.    The Statute Imposes Content-Based Restrictions On Speech... 13

        C.    The Statute Is A Viewpoint Based Regulation of Speech. ......... 16

    III.    The Statute Cannot Survive Strict Scrutiny ......................... 17

    IV.    The Statute Is Unconstitutionally Overbroad. .................... 20

    V.    The Statute Is Also Void For Vagueness. ............................ 21

CONCLUSION ...................................................................... 22

CERTIFICATE OF COMPLIANCE .......................................... 24

CERTIFICATE OF SERVICE ................................................. 25

# TABLE OF AUTHORITIES

*Am. Civil Liberties Union of Ill. v. Alvarez,*
   679 F.3d 583 (7th Cir. 2012) .............................................................*passim*

*Americans for Prosperity Foundation v. Bonta,*
   594 U.S. --- (July 1, 2021) .............................................................*passim*

*Animal Legal Defense Fund v. Kelly,*
   434 F. Supp. 3d 974 (D. Kan. 2020) .................................................... 17

*Babbitt v. United Farm Workers Nat'l Union,*
   442 U.S. 289 (1979) ...................................................................... 1, 4, 5

*Boos v. Barry,*
   485 U.S. 312 (1988) ............................................................................ 16

*Brown v. Entertainment Merchants Ass'n,*
   564 U.S. 786 (2011) ....................................................................... 9, 19

*Commodity Trend Serv. v. Commodity Futures Trading Comm'n,*
   149 F.3d 679 (7th Cir. 1998) ............................................................... 10

*Ctr. for Individual Freedom v. Madigan,*
   697 F.3d 464 (7th Cir. 2012) ................................................................. 3

*F.C.C. v. League of Women Voters of Calif.,*
   468 U.S. 364 (1984) ............................................................................ 15

*Hill v. Colorado,*
   530 U.S. 703 (2000) ............................................................................ 22

*Hoover v. Wagner,*
   47 F.3d 845 (7th Cir. 1995) ............................................................ 1, 5, 6

*Holder v. Humanitarian Law Project,*
   561 U.S. 1 (2010) ............................................................................... 11

*Lawson v. Hill,*
   368 F.3d 955 (7th Cir. 2004) ........................................................... 2, 10

*Majors v. Abell,*
   317 F.3d 719 (7th Cir. 2003) ............................................................ 4, 8

*McCullen v. Coakley,*
   573 U.S. 464 (2014) ................................................................ 15, 16

*NAACP v. Button,*
   371 U.S. 415 (1963) ................................................................ 18

*Reed v. Town of Gilbert,*
   576 U.S. 155 (2015) ............................................................ 13, 16, 17

*Reno v. Am. Civil Liberties Union,*
   521 U.S. 844 (1997) ................................................................ 22

*Rosenberger v. Rector & Visitors of Univ. Of Va.,*
   515 U.S. 819 (1995) ............................................................ 13, 16

*Schirmer v. Nagode,*
   621 F.3d 581 (7th Cir. 2010) .................................................... 3, 11

*Speech First, Inc. v. Killeen,*
   968 F.3d 628 (7th Cir. 2020) .................................................... 2, 7

*State v. Bagley,*
   164 Wis. 2d 255, 474 N.W.761 (Ct. App. 1991) ............................ 13, 16

*Susan B. Anthony List v. Dreihaus,*
   573 U.S. 149 (2014) ................................................................ 1, 5

**STATUTES**                                                          **PAGES**

Wis. Stat. § 29.083 .................................................................... 12

Wis. Stat. § 29.083(2)(a)2 .......................................................... 18

Wis. Stat. § 29.083(2)(a)3 .......................................................... 18

Wis. Stat. § 29.083(2)(a)7.c. .................................................... 12, 22

Wis. Stat. § 29.083(2)(a)7 ...................................................*passim*

Wis. Stat. § 978.05(1), (5) ........................................................ 8

iii

**ARGUMENT**

I.   The Record Establishes Plaintiffs' Standing.

    A.      Defendants Advocate An Erroneous Legal Standard.

The Defendants' brief replicates and amplifies the legal errors that plagued the district court's analysis of Plaintiffs' standing. Like the district court, Defendants fail to deal with Supreme Court precedent and a decision from this Court holding that a plaintiff's avowed desire to avoid violating an intent requirement in a regulation of speech does not create a Catch-22 automatically depriving her of standing. *Susan B. Anthony List v. Dreihaus*, 573 U.S. 149 (2014), *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979), and *Hoover v. Wagner*, 47 F.3d 845 (7th Cir. 1995).[1] Like the district court, Defendants set the threshold for First Amendment standing far too high, asserting that Plaintiffs can proceed only if they can show the Statute "squarely" or "plainly" covers their conduct. (Def.Br. 20, 24-25.) In fact, Plaintiffs show standing if the Statute "arguably" applies to their conduct, which it unquestionably does here. This is not mere semantics; if there is a plausible argument that the Statute covers Plaintiffs' recording and monitoring of hunters, Plaintiffs have standing, because their chill results from the threat of prosecution latent in the Statute and is further demonstrated in its history of enforcement against them. Certainty of prosecution is not required.

---

[1] The district court's opinion did not even mention *Hoover*, a key case in this Circuit for analyzing the impact of an intent requirement on standing to bring a First Amendment challenge, and Defendants likewise do not cite or discuss *Hoover* in their brief. This Court has never questioned *Hoover*'s standing analysis – rightly so, because that analysis is entirely consistent with the Supreme Court's analyses of similar intent requirements in *SBA List* and *Babbitt*.

Defendants misconstrue a footnote in *Speech First, Inc. v. Killeen*, 968 F.3d 628, 639 n.10 (7th Cir. 2020), that leads them to conflate the "objectively reasonable chilling effect" path to establish First Amendment standing with the "credible threat of enforcement" path to the same end, and thus to combine separate analyses into a murky, mashed-together argument. (Def. Br. 18-19.) We agree that both tests share a focus on objective facts, not subjective states of mind: there is neither an impermissible chill nor a credible threat of enforcement when the plaintiff's conduct is "clearly outside the statute's scope." *Lawson v. Hill*, 368 F.3d 955, 957 (7th Cir. 2004).

Yet the *Speech First* footnote goes on to state, "[n]evertheless, we search for both showings" and cites a case recognizing the basic principle that a chilling effect alone may qualify as an injury-in-fact sufficient for First Amendment standing. 968 F.3d at 639 n.10. Following this Court's lead, we discuss each path.

**B.     Plaintiffs Are Chilled Because Their Desired Conduct Falls Within The Scope Of The Statute.**

Even if Plaintiffs had never ventured on state-owned land to document hunting activity – if they had remained home and refrained from their desired activities because they feared prosecution under the Statute after the 2016 amendments – they would still have standing to bring this case. Forest County's lawless seven-month seizure of Professor Brown's camera and equipment, as outrageous as it was, can be ignored altogether and Plaintiffs would still have standing, because they wish to document people hunting, their desired activity falls within the Statute, and they are

refraining from engaging in the covered activity for fear of being prosecuted. This is a classic First Amendment chilling effect.

Defendants err at the very beginning when they argue that aggrieved parties' conduct must "squarely" or "directly" fall within the scope of a statute before they have First Amendment standing. (Def.Br. 20, 24-25.) That is not the law; in fact, their test sets the law on its head. Even the decisions that Defendants think favor their position set a much lower threshold, because the chilling effect is a threat to the core Constitutional right of free speech. *See Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 474 (7th Cir. 2012). In *Schirmer v. Nagode*, 621 F.3d 581 (7th Cir. 2010), this Court clearly articulated the standard:

> When a person is considering whether he risks prosecution for future actions, he rarely deals with certainties, but rather a broad spectrum of possibilities derived from a number of unknown variables. This uncertainty is particularly problematic in the realm of free speech, given the danger that vital protected speech will be chilled due to a reasonable fear of prosecution. For that reason, when an ambiguous statute arguably prohibits certain protected speech, a reasonable fear of prosecution can provide standing for a First Amendment challenge.

*Schirmer,* 621 F.3d at 586 (internal quotation and citation omitted).

The *Schirmer* plaintiff challenged the application of Chicago's general disorderly conduct ordinance to peaceful protest, and this Court held he failed to establish standing, but it also made clear, "[i]f we had any indication that the police were even *arguably* acting within the scope of the failure-to-disperse provision when they arrested plaintiffs, then these plaintiffs could have standing to challenge the facial constitutionality of that provision and to request injunctive relief." *Id*. at 587

3

(emphasis added). Similarly, in *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003), this Court held plaintiffs had standing under a vague statute, noting that standing is lacking only when a statute "*clearly fails to cover* [the plaintiff's] conduct." (Emphasis added.) *See also Babbitt*, 442 U.S. 289 at 302 (finding farmworker union had First Amendment chill standing to challenge provision criminalizing untruthful and deceptive consumer publicity, notwithstanding that union had no plan to "propagate untruths," where union had desire to continue engaging in consumer publicity campaigns).

To be clear, although Plaintiffs are only required to show that their desired speech activities are "arguably" within the statute's scope, this is not a close call. Plaintiffs' intended course of conduct is *explicitly* targeted by the Statute. Defendants cannot seriously contest that the Statute—targeting "[p]hotographing, videotaping, audiotaping, or through other electronic means, monitoring or recording the activities of [a] person" engaged in "lawful hunting, fishing, or trapping, or an activity associated with" those activities—applies directly to the recording, filming, photographing, and other speech activities that Plaintiffs have performed in the past and have a desire to continue. Instead, like the district court, Defendants focus on the Statute's intent requirement as the reason the Statute does not apply, reasoning that because Plaintiffs disavow any subjective intent to interfere with the hunt, their activities could not possibly fall within the Statute. (Def.Br. 22-23; *see also* A-14-A-16.)

Defendants can deploy this facile reasoning only by ignoring binding precedent. The Supreme Court's decisions in *Babbitt* and *SBA List* both found that plaintiffs had standing under speech-suppressing laws that imposed intent requirements. "Nothing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *SBA List*, 573 U.S. at 163. In *Babbitt*, the Supreme Court held that a plaintiff had standing to challenge a state statute that penalized the making of false statements even though the plaintiff denied any intent to "propagate untruths;" it was sufficient that the plaintiff had previously engaged in publicity campaigns subject to the statute and intended to do so in the future. 442 U.S. at 301.

Likewise, in *Hoover* the district court ruled that plaintiffs challenging a state-court injunction (issued against other parties) which they said restricted their First Amendment right to protest at abortion clinics lacked standing, because the plaintiffs denied any intent to act in concert with the named defendants in violating the injunction. 47 F.3d at 847. The court reasoned that "[s]ince the plaintiffs disclaim any intention to assist the named defendants they could not . . . be hurt by [the injunction]; and without actual or threatened harm there is no standing to sue in federal court." *Id.*

This Court reversed, first ruling that a plaintiff need show only "a reasonable probability – *not a certainty* – of suffering tangible harm unless he obtains the relief he is seeking in the suit," and that "[a]rrest, prosecution, and conviction are tangible harms, and so is abandoning one's constitutional right of free speech in order to avert

these harms." *Id.* By focusing on the intent requirement, the district court had impermissibly required the plaintiffs to choose between forgoing their rights to free speech and risking arrest, prosecution and conviction. *Id.* In short, plaintiffs had a right to "go right up to the line that separates legal from illegal protest," *id.*, and the requirement that a person have the "purpose and effect of assisting the party to violate the injunction" before being punished did not warrant the denial of plaintiffs' standing. *Id.* The Court even found that the journalist plaintiff had standing because he "fears, again not unreasonably, that the police will not accept his bona fides as a journalist but will treat him (perhaps realistically) as just another abortion protester." *Id.* at 847–48.

This Court's analysis in *Hoover* of a malleable intent requirement – albeit one contained in the law governing injunctions, not in a statute – closely tracks the district court's own parsing of the Statute's intent requirement here, in the context of analyzing the First Amendment affirmative defense. The district court rightly perceived that the Statute gives too much latitude to law enforcement, even though Plaintiffs disclaimed any intent to violate the statute because they sought to document the hunt, not obstruct it: their "conduct could be interpreted differently by a law enforcement officer or private citizen as *intended* to interfere with hunting rights." (A-19; emphasis in original.) Unfortunately, the district court did not recognize that its own insight applied with full force to standing – specifically, it overlooked the fact that Plaintiffs' professed mental state could not foreclose a

prosecution by a district attorney or DNR lawyer who "interpreted" Plaintiffs' conduct "differently . . . as *intended* to interfere with hunting rights."

Defendants' heavy reliance on *Speech First* in their standing argument is not well-founded. Like Plaintiffs in this case, the *Speech First* plaintiffs claimed a chilling effect: they argued that "the University's policies chill the students' speech." 968 F.3d at 639. This Court affirmed the denial of standing based ultimately on multiple failures of proof. In contrast to the university speech regulations at issue in *Speech First* that could not result in discipline and thus had "essentially no consequences," *id*., the Statute imposes *criminal* penalties for violations that include videorecording and photography of hunting activities. Similarly, in *Speech First* this Court found there was no standing because "Speech First has failed to identify in the record specific statements any students wished to make that the University's policies have chilled." *Id*. at 640. The record in this case contains numerous examples – cited at pages 5-6, 9, and 17 of Plaintiffs' initial brief – demonstrating that after the Statute was amended to encompass activities protected by the First Amendment, Plaintiffs refrained from going on public lands and documenting hunters, as they wished and intended to, because they feared being prosecuted.

The third factor supporting *Speech First*'s affirmance of the lower court's no-standing decision was the fact that meeting with university personnel under the challenged speech regulations was entirely optional and there were no facts showing that any students had nevertheless self-censored because of their fear of the consequences of refusing to meet with the university. *Id*. Obviously, Plaintiffs'

7

obligation to comply with the criminal law of Wisconsin is not "optional." Finally, the university department that administered the challenged speech regulations in *Speech First* had no authority to impose any disciplinary sanctions against students. *Id*. at 640. In contrast, the WDNR and the state's district attorneys have the power to enforce Wisconsin's criminal law. *See* Wis. Stat. § 978.05(1), (5). As a result, *Speech First* provides no support whatsoever to Defendants' argument against standing.

      C.    Although They Need Not Have, Plaintiffs *Also* Showed A Credible Threat Of Prosecution Based On Actual Threats And Enforcement Against Them.

We've demonstrated that a First Amendment plaintiff is chilled when he refrains from First Amendment-protected activities, "show[ing] an intention to engage in a course of conduct arguably affected by a policy, [but] fac[ing] a credible threat the policy will be enforced against him when he does." *Speech First*, 938 F.3d at 638. To be clear, a threat of prosecution is "latent in the existence of the statute." *Majors*, 317 F.3d at 721. Thus, even though they needed show merely the existence of a statute targeting their desired speech activities, here Plaintiffs *also* showed that, when they engaged in those First Amendment activities, the threat of prosecution under the statute *was* levied against them. Defendants' argument—that because those threats, and even a *seizure of Plaintiff Brown's camera* after issuance of a warrant *citing a possible violation of the Statute*, have not ultimately resulted in a prosecution Plaintiffs face no credible threat of prosecution (Def.Br. 23-24, 36-37) — again turns the law on its head.

Indeed, much of Defendants' argument against Plaintiffs' "credible threat" rests on their attempt to minimize the importance of Forest County's seizure of

Professor Brown's cameras, digital media and other materials and retention of them for seven months. Defendants focus exclusively on the fact that Brown was not prosecuted. (Def.Br. 23-24, 26-27.) But they do not even try to explain why the loss of the very material he uses to create his work and pursue his livelihood does not inflict an injury cognizable under the First Amendment.

Creation of speech is a fully protected First Amendment activity. *See Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 792 n.1 (2011). And "[t]he act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech." *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012.) Seizing and keeping Professor Brown's cameras and cell phone prevented him from engaging in the First Amendment activity of recording; seizing and keeping the digital images he had already obtained prevented him from engaging in the First Amendment activity of creating works using those images.

The fact that the sheriffs of Wisconsin are not parties to this case does not change this result. Had the Forest County District Attorney – who *is* a defendant in this case – heeded his duty not to infringe Brown's First Amendment rights, the real injury inflicted by the seizure and retention could have been minimized. But Defendant Simono did not do that. Instead, he sat on a charging decision for seven months, and even when he declined to charge Professor Brown, he did not make clear that Brown and others who monitored or recorded hunters in action would never be prosecuted in the future.

Like Wisconsin's other district attorneys, Defendant Simono has the power to prosecute violations of our state's criminal laws, entirely independent of the WDNR's power to do so. It would have been easy for Defendants to obtain affidavits from all district attorneys named as Defendants disclaiming any intent to enforce the statute against Plaintiffs and others conducting similar First Amendment hunt monitoring activities. Yet Defendants did not. This means that Plaintiffs *would* face a threat of prosecution were they to engage in their speech activities. "[A] threat of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute and the Government fails to indicate affirmatively that it will not enforce the statute." *Commodity Trend Serv. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998) (emphasis in original). Absent such express (and binding) disavowals, Plaintiffs have a more than reasonable fear of prosecution. *See Lawson*, 368 F.3d at 959.

As they did before the district court, Defendants attempt to defeat Plaintiffs' standing and whitewash Forest County's violation of Professor Brown's rights by emphasizing the WDNR's *prior* statements that Plaintiffs' activities are not within the scope of the statute. (Def.Br. 22-23.) Essentially, Defendants argue that the county law enforcement officers "misused" the Statute and should not have targeted Professor Brown because his activities were not within its scope, which they claim WDNR has "confirmed" to Plaintiffs Brown and Losse "on multiple occasions." *Id.* Yet Defendants still fail to recognize that *this only proves Plaintiffs' point* that the law's intent requirement is insufficient to prevent them from facing a threat of prosecution

where the Statute otherwise targets Plaintiffs' activities. Defendants' effective insistence that Plaintiffs must be willing to roll the dice and again risk the seizure of cameras and equipment, in the hopes that the statute will not be "misused" against them again, runs directly contrary to what the law requires of First Amendment plaintiffs. *Schirmer,* 621 F.3d at 586 ("A person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment") (citing *Holder v. Humanitarian Law Project,* 561 U.S. 1, 15 (2010)).

In sum, the district court's decision should be reversed because Plaintiffs have more than adequately proven their standing to challenge a Statute that directly singles out for criminal punishment their desired and past-practiced speech activities.

II. The Statute Targets Pure Speech Based On Its Content And Viewpoint.

A. The 2016 Amendment To The Statute Directly Targets Pure Speech.

This Court held in *Alvarez* that "[t]he act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording." 679 F.3d at 595. This is because "[r]estricting the use of an audio or audiovisual recording device suppresses speech just as effectively as restricting the dissemination of the resulting recording." *Id.* at 596.

The 2016 amendment extended the range of prohibited acts under the Statute to (among other things) "[p]hotographing, videotaping, audiotaping, or through other electronic means, monitoring or recording the activities of" a person "engaged in lawful hunting, fishing, or trapping, or an activity associated with lawful hunting,

fishing, or trapping[.]" Wis. Stat. § 29.083(2)(a)7.c. Photography, videotaping, audiotaping, and other forms of electronic monitoring are pure speech activities under *Alvarez*, so the Statute must be analyzed accordingly.

Nevertheless, Defendants contend that "[t]he hunter-harassment law does not [target protected speech]; it reaches only conduct, and thus avoids First Amendment scrutiny altogether." (Def.Br. 29.) They can make this argument only by ignoring *Alvarez*, so that is exactly what they do. Defendants' brief in this Court is 51 pages long. In those pages, Defendants cite *Alvarez* once (*id.*, 19), and then only in a standing argument that does not address the holding that restricting the use of recording devices suppresses speech. *See Alvarez*, 679 F.3d at 596. Nor do Defendants contend with the district court's ruling relying on *Alvarez* to hold that Plaintiffs intended to engage in conduct affected with a constitutional interest and thus satisfied the first element of standing. (A-10.) "Unsupported" is too generous a word for Defendants' contention that this is not a First Amendment case.

Defendants' argument for the application of intermediate scrutiny because the Statute regulates both "speech and nonspeech elements" (Def.Br. 27) likewise fails because it ignores the existence of subsection 7 of the Statute. Defendants curiously assert that Plaintiffs "make no argument that the hunter harassment law in its entirety is subject to First Amendment scrutiny[.]" (Def.Br. 38.). But as the district court correctly understood and as both Plaintiffs (Pl.Br. 1, 13, 16, 45) and Defendants (Def.Br. 1, 12) repeatedly state in the briefs, Plaintiffs challenge *solely* "the constitutionality of an amendment to Wisconsin Statute § 29.083" (A-1) targeting

First Amendment-protected speech—those provisions relating to visual proximity, approaching, "creating visual or audio of someone" engaged in hunting, fishing, or trapping or related activities, or causing a person to engage in such conduct. (A-1.) This lawsuit has nothing to do with the provisions of the Statute forbidding actions that "impede" or "obstruct" hunting, fishing, and trapping activities—except, of course, that the provisions demonstrate the superfluousness of the speech-targeting amendment for any purpose other than silencing Plaintiffs. Yet Defendants' brief is written as if Plaintiffs seek to relitigate *State v. Bagley*, 164 Wis. 2d 255, 474 N.W.761, 764 (Ct. App. 1991), even though there is nothing in any pleading, affidavit, or brief filed by Plaintiffs in any court to support that suggestion. Defendants' strawman effort to rewrite Plaintiffs' claims so they target the provisions of the Statute that concern conduct outside the scope of the First Amendment fails.

B.     The Statute Imposes Content-Based Restrictions On Speech.

Defendants acknowledge that "[t]he government may not regulate speech 'when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" (Def.Br. 27 n.3., quoting *Rosenberger v. Rector & Visitors of Univ. Of Va.*, 515 U.S. 819, 829 (1995).) Defendants also concede that content-based regulations, which target speech based on the topic discussed or the message expressed, "are presumptively invalid." (*Id.* 27, citing *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).) Defendants go awry when they try to apply these basic rules to the Statute.

Their argument fails because it merely rewrites Defendants' effort to exempt the amendments – again, the *only* parts of the Statute Plaintiffs challenge – from any

First Amendment scrutiny at all. In contending that the Statute does not impose a content-based restriction, Defendants assert that "the law has no bearing on 'speech about hunting' – it applies, by its terms, to *conduct* that is intended to interfere with other *conduct* (hunting)," (Def.Br. 34; emphasis in original), and conclude that "it is irrelevant whether a particular recording is 'about' hunting, birdwatching, or anything at all. What matters under the challenged provisions is whether the *conduct* is done with the requisite 'inten[t] to impede or obstruct a person who is engaged in lawful hunting.'" (*Id*. 35; emphasis in original.)

Defendants thus advance the extraordinary proposition that a law enforcement officer, prosecutor, or court can find a violation of the prohibition on "[p]hotographing, videotaping, audiotaping, or through other electronic means, monitoring or recording" a person engaged in hunting, fishing, or trapping without evaluating whether the photograph or audiotape was in fact of a person engaged in hunting or fishing.  Defendants expressly argue as much in their discussion of Forest County's seizure of Professor Brown's equipment and media: "The conduct on the recordings would (or would not) violate the law regardless of whether it is captured on camera, and the mere fact that it is captured on camera would not amount to a separate violation." (*Id*. 37.)

Defendants' argument is unfounded. First, it is impossible to decide if someone has violated a provision of a law that criminalizes engaging in subject-specific speech activities without deciding whether that person has in fact engaged in those activities, even if other parts of the law impose additional elements that the

government must prove, such as intent to interfere through the specified conduct, and effecting that intent through physical impeding or obstruction. Moreover, Defendants' suggestion that the Court should analyze whether the Statute is content-based by indulging in extra-record speculation about the reason the law enforcement officer was examining the videotape seized from Plaintiff Brown, has no basis in law (or logic).

The inevitable conclusion that Defendants contort themselves to avoid is this: *Not just any photograph, videotape, audiotape, or other electronic recording violates the Statute*. The intent and physical obstruction elements of the offense – the only ones that matter, in Defendants' view – under the challenged provisions of the Statute never become relevant unless the image or recording is *of* "a person who is engaged in lawful hunting, fishing, or trapping, or an activity associated with lawful hunting, fishing or trapping."

That decision can be made only by examining the contents of the photograph, videotape, audiotape, or other type of electronic recording – and this means that the Statute is content based, triggering strict scrutiny. A law is "content based if it require[s] 'enforcement authorities' to 'examine the content of the message that is conveyed to determine whether' a violation has occurred." *McCullen v. Coakley*, 573 U.S. 464, 479 (2014), quoting *F.C.C. v. League of Women Voters of Calif.*, 468 U.S. 364, 383 (1984).

A law is also content based if it is "concerned with undesirable effects that arise from 'the direct impact of speech on its audience' or 'listeners' reactions to speech.'"

*McCullen*, 573 U.S. at 481, quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988). The district court credited Defendants' effort to justify the law as a measure for "preventing conflict in the woods, particularly armed conflict[.]" (A-21.) Armed conflict might result from photographing or recording hunters in action only if the hunters – the people we know are armed – are so enraged by the photographers and videographers that they start shooting. Shooting a person engaged in First Amendment activity is an extreme example of "listeners' reactions to speech" that makes a regulation aimed at preventing that reaction content based.

Finally, a regulation is content based if it was "adopted by the government because of disagreement with the message [the speech] conveys." *Reed*, 576 U.S. at 164. The record unequivocally establishes that the amendments to the Statute challenged in this case were adopted precisely because the Legislature wanted to silence anti-hunting activists. (*See* Pl.Br. 7-8, 30-31.) This too triggers strict scrutiny.

C.     The Statute Is A Viewpoint Based Regulation of Speech.

Ironically, the intent requirement that Defendants repeatedly tout as the Statute's saving grace actually condemns it as a viewpoint based regulation that must satisfy strict scrutiny – which it cannot do. A clumsy filmmaker who intended to make a movie praising Wisconsin's hunting culture but whose efforts physically impeded or obstructed hunters would not violate the statute, while people like Plaintiffs who oppose hunting may be subject to prosecution because their actions will be imputed to have the intent to stop or hinder hunting.

This is the essence of viewpoint discrimination, an "egregious form of content discrimination" that is presumptively unconstitutional. *Rosenberger*, 515 U.S. at 829.

Defendants claim this argument has no basis in the statutory text (Def.Br. 35-36), ignoring that the statute itself singles out for criminal punishment photography and videography of hunting activities where the photographer or videographer's actions are deemed intended to impede those activities. A district court recently explained precisely why a similar intent requirement in a Kansas statute resulted in a viewpoint based regulation: "[A]n undercover photographer would not violate [the Kansas law] if he or she lied to gain access to a Borden Dairy farm to covertly film a tribute to Elsie the cow. As long as the photographer did so with intent to benefit Borden Dairy, he or she would not violate [the statute] . . . . The law plainly targets negative views about animal facilities and therefore discriminates based on viewpoint." *Animal Legal Defense Fund v. Kelly*, 434 F. Supp. 3d 974, 1000-01 (D. Kan. 2020).

III.    The Statute Cannot Survive Strict Scrutiny.

Strict scrutiny, triggered by the Statute's content based and viewpoint based provisions, imposes a heavy burden on Defendants. First, they must show that the Statute directly serves a compelling state interest. *Reed*, 576 U.S. at 163. Second, the statute must be "narrowly tailored" to achieve that interest; it may neither be overinclusive, regulating conduct that is not necessary to restrict in order to serve the interest, nor underinclusive, leaving unregulated harms that are more threatening to the proffered compelling interest. *Id*. As the Supreme Court reiterated just last week, "a substantial relation to an important interest is not enough to save a" speech regulation "that is insufficiently tailored." *Americans for Prosperity Foundation v. Bonta*, 594 U.S. --- (July 1, 2021) (Slip Op. at 9)). This is because "[n]arrow tailoring

is crucial where First Amendment activity is chilled—even if indirectly—'[b]ecause First Amendment freedoms need breathing space to survive.'" *Id.* at 9-10 (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

Defendants' half-hearted effort to satisfy strict scrutiny fails because their own arguments purporting to show that the Statute does not affect speech – focusing on the requirement of physical impeding or obstruction (Def.Br. 29, 30, 34, 36, 37) – prove the amendments Plaintiffs are challenging are wholly unnecessary to any purpose other than stopping critical speech activities. Before 2016, the law expressly prohibited "impeding or obstructing a person who is engaged in lawful hunting or trapping," Wis. Stat. § 29.083(2)(a)2, and "impeding or obstructing a person who is engaged in an activity associated with lawful hunting, fishing, or trapping." Wis. Stat. § 29.083(2)(a)3. There was no need to enact the prohibitions imposed by subsection (2)(a)7 "if and only if [a filmmaker] demonstrated the requisite intent to impede or obstruct," (Def.Br. 36), because impeding and obstructing were *already illegal*. Defendants effectively concede this point by arguing that enforcement officials need not determine whether a recording falls within the scope of the specific prohibitions of subsection (2)(a)7 (Def.Br. 37). A law that need not be consulted in a prosecution for its violation is by definition not tailored, narrowly or otherwise, to serve any legitimate governmental purpose. It exists solely to threaten and intimidate.

We know from the legislative history that opponents of hunting were the targets of the Statute. Intimidation of political opponents is not a compelling governmental interest, let alone an arguably legitimate one. Defendants also claim

that Wisconsin "has an important and substantial interest in enacting legislation to protect" its citizens' constitutional right to hunt (Def. Br. 33), but they provide no facts establishing that the pre-amendment law's prohibitions on impeding or obstructing hunters were inadequate to serve that interest, or why it was necessary to broaden the law by adding subsection (2)(a)7's provisions targeting pure speech. This is fatal. *Americans for Prosperity*, (Slip Op. at 14) (invalidating speech disclosure provision under exacting scrutiny because the government did not produce a "record" that it "considered alternatives" to the challenged law before targeting speech).

Defendants' objective of preventing armed conflict in the woods fails strict scrutiny not because it isn't compelling, but because it is woefully underinclusive. "Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest that it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 802 (2011). The intent requirement cannot be narrowly tailored to achieve violence prevention unless Defendants prove that hunters become enraged enough to shoot when their pursuits are impeded or obstructed by persons intending that result, but they passively allow obstruction by merely negligent filmmakers and photographers. Defendants proved no such facts because they don't exist. Similarly, there is no reason to believe that hunters in the woods illegally will not react with violence when their pursuit of game is impeded or obstructed, but those hunters are expressly not protected by the Statute. The violence-prevention justification is a smokescreen to hide Defendants'

animus toward Plaintiffs' speech. There is no record evidence that comes close to meeting the requirements of strict scrutiny.

IV.    The Statute Is Unconstitutionally Overbroad.

Defendants deploy the same arguments against overbreadth that they use to argue that the Statute does not regulate speech, but only non-expressive conduct. (Def.Br. 41.) Those arguments fare no better in the overbreadth context, because Defendants still refuse to acknowledge Plaintiffs are not challenging the pre-amendment version of the Statute, but only the four specific prohibitions of Wis. Stat. § 29.083(2)(a)7. In other words, the only provisions of the law under dispute are the ones that target pure speech. By definition, these provisions sweep too broadly. They apply only to pure speech protected under *Alvarez*, 679 F.3d at 596, and do not contain the "impeding" or "obstructing" requirements that Defendants assert save the Statute from Plaintiffs' challenge.

As the Supreme Court just explained, when a defendant fails to justify a restriction on speech, the challenged law is overbroad and facially invalid. *Americans for Prosperity*, Slip Op. at 15. In conducting its overbreadth analysis, the court emphasized that because, like here, the government failed to produce a record showing it "considered alternatives" to the challenged law, "every" application of the law to was "[un]justified." *Id.* at 18-19. As a result, there were no legitimate applications of the law to counterbalance its restrictions on First Amendment freedoms. *Id.* Therefore, "[t]he risk of a chilling effect … [was] enough" to hold the law overbroad and facially invalid. *Id.* at 19. "First Amendment freedoms need breathing space to survive" and thus as-applied relief is insufficient where the

"pertinent facts"—the absence of a record justifying the law—are the same "across the board." *Id.* at 19. Here, the four parts of subsection (2)(a)7 are overbroad because the regulation has *no* legitimate scope; the state interests sought to be protected would be fully preserved by the impeding and obstructing requirements even if the challenged provisions did not exist, making their sole purpose the suppression of protected expression.

Neither does the intent requirement save the Statute, contrary to both the district court (A-22) and Defendants. (Def.Br. 42.) Indeed, the district court's conclusion that the intent requirement "significantly narrows the scope of the statute" (A-22) is puzzling in light of its accurate statement only three pages before, that Plaintiffs' exercise of the pure speech activities covered by subsection (2)(a)7 "could be interpreted differently by a law enforcement or private citizen as *intended* to interfere with hunting rights." (A-18-19; emphasis added.). If the intent requirement is that expansive, it fails to narrow the Statute's scope at all, and the overbreadth challenge should be sustained.

V.    The Statute Is Also Void For Vagueness.

Both the district court (A-21-22) and Defendants (Def.Br. 46, 49) emphasize the Statute's intent requirement in their rejection of Plaintiffs' vagueness argument. The emphasis is as puzzling in the vagueness context as it was for overbreadth. The district court rightly recognized that even people who wanted to comply with the Statute while engaging in speech plainly within the scope of subsection (2)(a)7 might still be subjected to prosecution if law enforcement saw an intent to interfere even though the targets of prosecution disclaimed it. (A-18-19.) The intent provisions are

impermissibly elastic and uncertain in application for purposes of the First Amendment affirmative defense; reaching a different conclusion in the vagueness analysis is unwarranted.

*Hill v. Colorado*, 530 U.S. 703 (2000), does not aid Defendants' vagueness arguments on either the "proximity" provision or the "approaching or confronting" parts of the Statute. The state law in *Hill* was specific in a way that no provision of the Statute is: it limited the scope of prohibited activity to the area "within 100 feet of the entrance of a health care facility[.]" (Def.Br. 49.) Including a specific distance in a law that limits where First Amendment rights can be exercised makes it much easier to comply with that law. By contrast, the Statute here not only fails to specify an area where it applies – the photography and recording prohibition does exactly the opposite: "This subd. 7.c. applies regardless of where the act occurs." Wis. Stat. § 29.083(2)(a)7.c. The other vague provisions do not contain this expansion of scope – but they also lack the specificity that made the statute in *Hill* survive the vagueness challenge. Subsection 7.a. and 7.b., criminalizing "maintaining a visual proximity" and "approaching" hunting activities, leave the photographer to guess at how close she can come and still be safe from criminal penalties—a perilous position which the Supreme Court has said "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 871-72 (1997).

## CONCLUSION

For the reasons stated in this brief and in Plaintiffs' initial brief, this Court should reverse the district court and (1) find the Plaintiffs have standing to challenge

the constitutionality of Wis. Stat. § 29.083(2)(a)7; (2) hold the Statute to be unconstitutional under strict scrutiny; (3) hold that the Statute is unconstitutional under the overbreadth doctrine and is void for vagueness; and (4) remand for the entry of a declaratory judgment and permanent injunctive relief barring enforcement of the Statute.

Respectfully submitted this 6th day of July, 2021.

By:   *s/ Joseph S. Goode*
       **LAFFEY, LEITNER & GOODE LLC**
       Joseph S. Goode
       Mark M. Leitner
       Jessica L. Farley
       325 E. Chicago Street
       Suite 200
       Milwaukee, WI 53202
       (414) 312-7003 Phone
       (414) 755-7089 Facsimile
       jgoode@llgmke.com
       mleitner@llgmke.com
       jfarley@llgmke.com

       **ANIMAL LEGAL DEFENSE FUND**
       Christopher Berry
       Kelsey Eberly
       Animal Legal Defense Fund
       525 E. Cotati Ave.
       Cotati, CA 94931
       (707) 795-2533
       cberry@aldf.org
       keberly@aldf.org

       *Attorneys for Plaintiffs-Appellants*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,963 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) as verified through Microsoft Word's "Word Count" function.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 12-point Century Schoolbook font.

Dated:  July 6, 2021

*s/ Joseph S. Goode*
Joseph S. Goode

*One of the Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF No. system. Participants in this case who are registered CM/ECF No. users will be served by the CM/ECF No. system.

*s/ Joseph S. Goode*
Joseph S. Goode
